1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| SANGHAMITRA BASU, | Case No. 2:20-CV-1432 JCM (BNW) |
| Plaintiff(s), | |
| v. | |
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, | |
| Defendant(s). | |

**AMENDED ORDER**[1]

Presently before the court is plaintiff Sanghamitra Basu ("plaintiff")'s motion for partial summary judgment. (ECF No. 49). Defendant Mass Mutual Life Insurance Company ("defendant") filed a notice of non-opposition (ECF No. 59), to which plaintiff replied (ECF No. 66).

Also before the court is defendant's motion for partial summary judgment. (ECF No. 54). Plaintiff filed a response (ECF No. 60), to which defendant replied (ECF No. 71).

Also before the court is defendant's motion to strike the report of plaintiff's expert witness. (ECF No. 63). Plaintiff filed a response, (ECF No. 72), to which defendant replied while awaiting adjudication of its motion for leave to file that reply (ECF No. 77).

Also before the court are defendant's motions to extend time to file a reply or, in the alternative, for leave to file a reply to its motion to strike. (ECF Nos. 73–74). Plaintiff filed a response (ECF No. 75), to which defendant replied (ECF No. 76).

---

[1] This amended order corrects a typographical error on page 14, line 18 of the original order. (ECF No. 82).

James C. Mahan
U.S. District Judge

## I.      Background

This action is an insurance dispute arising from a slip and fall incident at the Miracle Mile Shops in Las Vegas.  Plaintiff, a pain management physician, slipped and fell at the shops on August 25, 2012.  (ECF No. 1-1 at 4).  At the time of her fall, she had an insurance policy with defendant.  That policy required defendant to pay total disability benefits if the insured could not perform the primary duties of her occupation due to injury.  (*Id.*)  The policy also limited payments to 24 months for any disability "caused or contributed to by a Mental Disorder."  (ECF No. 54-1 at 16).

Following her fall, plaintiff was diagnosed with several spinal injuries, which allegedly have caused her continuing pain and cognitive impairment.  (ECF No. 1-1 at 5).  In early 2016, plaintiff filed a disability claim with defendant.  (*Id.* at 6).  Plaintiff provided medical records that purported to show that she was "totally disabled" under the policy.  (*Id.* at 3).  Defendant disagreed with that characterization and conducted its own investigation of her alleged disability, but conditionally approved the claim on October 27, 2016.  (*Id.* at 9–10).  Throughout its investigation, defendant paid benefits to plaintiff under a "reservation of rights."  (*Id.* at 10).

Based on its review of plaintiff's medical records and consultation with its retained medical professionals, defendant eventually determined that plaintiff's injuries were the result of a mental disorder under the policy.  (*Id.* at 12).  Thus, on December 14, 2019, defendant informed plaintiff that it would be discontinuing payment of benefits under the mental disorder limitation.  (*Id.*)

Plaintiff now brings this action for compensatory and punitive damages asserting that defendant breached its insurance contract, contravened the implied covenant of good faith and fair dealing, and violated Nevada Revised Statute § 686A.310.  (*Id.* at 13–15).  Defendant has moved for summary judgment on the claims for violation of the implied covenant of good faith and fair dealing and NRS § 686A.310.  (ECF No. 54).  Defendant also moves for summary judgment as to punitive damages and as to the burden of proof on the plaintiff's breach of contract claim.  (*Id.*)

. . .

## II.     Legal Standard

A.  Motions in limine

James C. Mahan
U.S. District Judge

1    "The court must decide any preliminary question about whether . . . evidence is

2    admissible." Fed. R. Evid. 104.  Motions in limine are procedural mechanisms by which the court

3    can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial

4    evidence.  *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009); *Brodit v. Cambra*, 350

5    F.3d 985, 1004–05 (9th Cir. 2003).

6    "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the

7    practice has developed pursuant to the district court's inherent authority to manage the course of

8    trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980).  Motions in limine may be used to

9    exclude or admit evidence in advance of trial.  *See* Fed. R. Evid. 103; *United States v. Williams*,

10   939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling in limine that prosecution could

11   admit impeachment evidence under Federal Rule of Evidence 609).

12   Judges have broad discretion when ruling on motions in limine.  *See Jenkins v. Chrysler*

13   *Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th

14   Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test

15   and we will uphold its decision absent clear abuse of discretion.").  "[I]n limine rulings are not

16   binding on the trial judge [who] may always change his mind during the course of a trial."  *Ohler*

17   *v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that *in limine*

18   rulings are always subject to change, especially if the evidence unfolds in an unanticipated

19   manner).

20   "Denial of a motion in limine does not necessarily mean that all evidence contemplated by

21   the motion will be admitted [or excluded] at trial.  Denial merely means that without the context

22   of trial, the court is unable to determine whether the evidence in question should be excluded."

23   *Conboy v. Wynn Las Vegas, LLC*, No. 2:11-cv-1649-JCM-CWH, 2013 WL 1701069, at *1 (D.

24   Nev. Apr. 18, 2013).

25   . . .

26   . . .

27   B.  Motion for Summary Judgment

28

**James C. Mahan**
**U.S. District Judge**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp*., 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient

that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**III.  Discussion**

As an initial matter, the court grants plaintiff's motion for partial summary judgment as to defendant's twelfth affirmative defense. (ECF No. 49). As defendant concedes in its non-opposition, there is insufficient evidence to conclude plaintiff's policy was subject to ERISA. *See* (ECF No. 59).

Further, the court denies defendant's motion for an extension of time to file a reply to its motion to strike (ECF No. 73) and its alternative motion for leave to file that reply (ECF No. 74). Although captioned as a motion to strike, the court treats defendant's initial motion as a motion in

James C. Mahan
U.S. District Judge

- 5 -

1   limine. The motion to strike seeks an evidentiary ruling excluding testimony from plaintiff's

2   purported expert witness. *See Heller*, 551 F.3d at 1111–1112 ("A motion in limine is a procedural

3   mechanism to limit in advance testimony or evidence in a particular area.")  Defendant cannot

4   circumvent this district's local rules by mischaracterizing its motion, especially since it filed the

5   instant motion with a LR 16-3(a) certification as is required of a motion in limine. *See, e.g.*,

6   *Lemperle v. Avis Rent-A-Car Syst.*, No. 2:18-CV-202-JCM-DJA, 2020 WL 13517875 (D. Nev.

7   Jan. 2, 2020).  A reply to a motion in limine is not permitted without leave of court, and defendant

8   makes no argument as to why the court should permit a reply.  Defendant's proposed reply (ECF

9   No. 77) is STIRCKEN from the record, and the court will not consider any arguments contained

10   within.

11        A.  Terry Van Noy

12        Federal Rule of Evidence 702 provides that a witness qualified as an expert may testify if

13   "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

14   understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient

15   facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert

16   has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

17        In determining whether an expert's testimony is reliable under Rule 702, courts consider

18   "(a) whether the theory or technique can and has been tested; (b) whether the theory or technique

19   has been subjected to peer review and publication; (c) the known or potential rate of error for the

20   technique; and (d) the theory or technique's general degree of acceptance in the relevant scientific

21   community.  *Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 945 (9th Cir. 2009) (citing

22   *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).

23        District judges retain "broad latitude to determine" whether these factors reasonably

24   measure the reliability of an expert witness's testimony.  *Estate of Barabin v. AstenJohnson, Inc.*,

25   740 F.3d 457, 463 (9th Cir. 2014) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150

26   (1999)).  "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping'

27   obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony

28   based on 'technical' and 'other specialized' knowledge."  *Kumho Tire Co. v. Carmichael*, 526 U.S.

James C. Mahan
U.S. District Judge

- 6 -

137, 141 (1999).  This "gatekeeping obligation" requires "that all admitted expert testimony is both relevant and reliable."  *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017).  Expert testimony must be relevant and reliable, and it must "relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs."  *Guidroz–Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).

Exclusion of expert testimony is proper only when such testimony is irrelevant or unreliable because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

Defendant asserts that the expert report of plaintiff's purported insurance expert, Terry Van Noy, must be stricken because (1) he is not qualified as an expert on insurance claims handling, (2) his testimony is not based on reliable methodology, and (3) he relies on personal opinion and makes impermissible conclusions of law.  *See* (ECF No. 63).

### 1.  Qualifications

FRE 702 requires a testifying expert be "qualified by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Rule 702 "contemplates a broad conception of expert qualifications." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994).

Van Noy has 51 years of experience in the insurance industry.  (ECF No. 60-6 at 892).  He has managed claim departments and developed policies to handle life, dental, disability, and health insurance claims.  (*Id.*)  He states that he has personally investigated claims.  (*Id.*)

"This lays at least the minimal foundation of knowledge, skill, and experience required in order to give 'expert' testimony on the practices and norms of insurance companies in the context of a bad faith claim." *Thomas*, 43 F.3d at 1269.  The Ninth Circuit has ratified a district court's decision to allow an insurance expert to testify in a similar case when the proffered expert had a similar resume to Van Noy.  *See Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1016 (9th Cir. 2004) (finding that 25 years' experience evaluating claims, marketing insurance products, and evaluating insurance policies sufficiently qualified an expert witness to testify as to a bad faith claim).

1    Further, defendant's argument that Van Noy is giving a medical opinion that he is

2    unqualified to deliver is unpersuasive.  What Van Noy has done is no different than what

3    defendant's own claim handlers did.  Defendant's claim handlers determined that the facts showed

4    plaintiff was not disabled.  *See, e.g.*, (ECF No. 54-54).  Van Noy, looking at the same facts, came

5    to the opposite conclusion.  A party cannot exclude an expert witness's testimony simply because

6    that expert came to an unfavorable conclusion.  Van Noy is qualified as an insurance claims

7    handling expert.

8                                    *2.  Reliability*

9    Defendant also argues that Van Noy's testimony must be excluded because it is not the

10   product of a reliable methodology.

11   An expert's testimony must be based on "sufficient facts or data," and must be the product

12   of reliable principle or methods that are applied to the facts of the case.  Fed. R. Evid. 702.  In the

13   case of non-scientific testimony, the traditional *Daubert* factors are less pertinent.  *United States*

14   *v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000).  Instead, "the knowledge and experience of the

15   expert, rather than the methodology or theory behind" the testimony is most relevant.  *Mukhtar v.*

16   *Cal. State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002).

17   Defendant criticizes Van Noy's report as "bereft of explanation" and reliant "on

18   unsupported opinions disguised as 'facts.'"  (ECF No. 63 at 17–18).  As mentioned above, Van

19   Noy has over fifty years of experience in the insurance industry, primarily as an executive and

20   consultant for claims handling departments.  (ECF No. 60-6 at 892).  He has articulated a list of

21   ten standards and relied on the facts contained in at least thirty-nine different documents to form

22   his opinions.  (*Id.* at 899, 906).  His report synthesizes his opinions based on an application of

23   those ten standards to the facts of the case.  Defendant may disagree with Van Noy's conclusions,

24   but that disagreement does not go to the testimony's reliability; it goes to its credibility, which is

25   for a jury to determine.  Based on the foregoing, the court finds that his testimony is reliable.

26                                    *3.  Ultimate Issue*

27   Defendant also asserts that Van Noy's report must be excluded because it improperly

28   reaches legal conclusions.

**James C. Mahan**
**U.S. District Judge**

- 8 -

An expert witness may properly embrace an ultimate issue to be decided by the eventual factfinder. Fed. R. Evid. 704(a). That testimony may also refer to the law, so long as it does not make an ultimate conclusion or instruct the jury on the applicable law. *See Hangarter*, 373 F.3d at 1016–17.

In his expert report, Van Noy refers to defendant's actions as unreasonable in at least six of his twelve "opinions." (ECF No. 60-6 at 900–02). The heart of plaintiff's claims, particularly her claim for breach of the implied covenant of good faith and fair dealing, is whether defendant acted reasonably when it denied her coverage. *See Falline v. GNLV Corp.*, 823 P.2d 888, 891 (Nev. 1991). While Van Noy may be qualified and his testimony is reliable, his conclusions read as a court's opinion, not an expert report. He usurps the role of the court and the jury in making ultimate conclusions of law. This is not a case where Van Noy makes passing mention of the law as a means to reach his conclusions. *See Hangarter*, 373 F.3d at 1017. Because the opinions expressed in Van Noy's expert report are nearly all legal conclusions, defendant's motion to strike that report is granted.

B. Summary Judgment

Defendant moves for summary judgment on plaintiff's claims for bad faith, breach of the Nevada Unfair Claims Settlement Practices Act, and punitive damages. (ECF No. 54 at 2). It also seeks a holding that plaintiff must prove she is physically disabled due to a physical condition to prevail on her breach of contract claim. (*Id.*).

*1.* Bad Faith

In order to prevail on a bad-faith claim, plaintiffs must show "the absence of a reasonable basis for denying benefits and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Falline*, 823 P.2d at 891 (quotation marks, ellipses, and citation omitted).

Because bad faith requires the defendant to be objectively and subjectively unreasonable, the genuine dispute doctrine provides that "the insurer is not liable for bad faith for being incorrect about policy coverage as long as the insurer had a reasonable basis to take the position that it did." *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1242 (D. Nev. 1994)

James C. Mahan
U.S. District Judge

- 9 -

1    (citing *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1355 (Nev. 1986)).  The

2    Ninth Circuit has unambiguously held that, "because the key to a bad faith claim is whether denial

3    of a claim was reasonable, a bad faith claim should be dismissed *on summary judgment* if the

4    defendant demonstrates that there was 'a genuine dispute as to coverage.'"  *Feldman v. Allstate*

5    *Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003) (emphasis added).

6         As explained above, Terry Van Noy's expert report is made up of conclusions of law; thus,

7    this court has stricken it and will not consider the evidence contained within.

8         Plaintiff argues that defendant acted in bad faith when it subjected her claim to the mental

9    disability limitation.  See (ECF No. 60 at 19).  She claims that defendant disregarded evidence and

10   looked for reasons to deny her claim.  (*Id.*)  Not so.  Plaintiff cites to no evidence indicating that

11   defendant tried to find a way to deny her claim.  Indeed, defendant paid benefits and continued to

12   investigate her claim while looking for evidence corroborating her claim of total physical disability

13   while being clear that it was "reserving its rights" to discontinue payment based on the results of

14   that investigation.  (ECF No. 1-1 at 10).

15        Likewise, the fact that defendant came to a different conclusion than plaintiff's doctors

16   does not mean that defendant "failed to consider" plaintiff's evidence; it means that it interpreted

17   the evidence differently.  Specifically, plaintiff points to statements by Dr. Mortillaro and claims

18   that defendant failed to give them adequate consideration, even though Dr. Mortillaro indicated

19   that plaintiff's "clinical presentation was consistent with the diagnosis of a Somatic Symptom

20   Disorder."  *See* (ECF No. 54-22).

21        Defendant's consulting physicians considered Dr. Mortillaro's opinions.  (ECF Nos. 54-

22   36; 54-41).  Similarly, defendant's consulting physicians reviewed the records of plaintiff's

23   treatment with every other physician, including Drs. Kidwell, Thompson, Travnicek, and Nagy.

24   (ECF Nos. 54-35; 54-36; 54-37; 54-41; 54-47).  Plaintiff may disagree with defendant's

25   conclusion, but there is no evidence that she can fault defendant's process.  Defendant did not

26   disregard evidence of plaintiff's purported disability.

27        Furthermore, there is no evidence that defendant looked for reasons to deny plaintiff's

28   claim. Defendant had evidence from Dr. Klein and Dr. Cestkowski from as early as 2016 that

James C. Mahan
U.S. District Judge

1   plaintiff did not suffer head trauma and her disability did not result from physical injury.  (ECF

2   Nos. 54-6; 54-7).   Defendant, nevertheless, continued to pay out plaintiff's claim, which is

3   inconsistent with an argument that it was looking for reasons to subject the claim to the mental

4   disorder limitation.  *See* (ECF No. 54-18).   Requests for more information to corroborate a

5   disability claim do not equate to an attempt to limit benefits.  *See Meek v. Standard Ins. Co.*, 47

6   Fed. App'x 37, 38 (9th Cir. 2002).

7          It may be that defendant incorrectly subjected plaintiff's claim to the mental disability

8   limitation.  Indeed, that is the heart of plaintiff's breach of contract claim.  That does not mean

9   defendant acted unreasonably in its limitation of benefits, however, which is what plaintiff's bad

10  faith claim alleges.  There is no genuine issue of material fact—defendant acted reasonably when

11  it subjected plaintiff's claim to the mental disability limitation after a four-year investigation that

12  considered plaintiff's evidence.  The court grants defendant's motion for summary judgment as to

13  plaintiff's claim for breach of the covenant of good faith and fair dealing.

14                       *2.*  Nevada Unfair Claim Settlement Practices Act

15         The Nevada Unfair Claims Settlement Practices Act ("UCSPA"), codified at Section

16  686A.310 of the Nevada Revised Statutes, addresses "the manner in which an insurer handles an

17  insured's claim." *Zurich Am. Ins. Co. v. Coeur Rochester*, Inc., 720 F. Supp. 2d 1223, 1236 (D.

18  Nev. 2010).  The statute lists sixteen activities that constitute unfair practices.  Nev. Rev. Stat. §

19  686A.310(1)(a)-(p).  When an insurance company engages in one of these prohibited activities,

20  the insured may bring a private right of action against the insurer for violations of the statute.  *See*

21  *Hart v. Prudential Prop. & Cas. Ins. Co.*, 848 F.Supp. 900, 903 (D. Nev. 1994).

22         Plaintiff's complaint alleges four independent violations of the UCSPA.  She alleges that

23  defendant (1) unfairly denied her claim when coverage under the policy was reasonably clear; (2)

24  misrepresented pertinent facts; (3) failed to adopt and implement reasonable claims investigation

25  standards; and (4) compelled her to initiate litigation to obtain benefits.  (ECF No. 1-1 at 15).

26         As discussed above, coverage under the policy was not clear; defendant had reasonable

27  grounds to deny her coverage.  Similarly, defendant could not have compelled plaintiff to initiate

28

James C. Mahan
U.S. District Judge

1    litigation when it gave plaintiff an opportunity to appeal its decision with a new claim examiner.

2    (ECF No. 1-1 at 12).

3         As to the allegations that the claim investigation standards were unreasonable, plaintiff's

4    argument is unclear.  The central contention, however, is that because the investigation took four

5    years, it was neither prompt, nor reasonable.  Plaintiff mischaracterizes the record.  Defendant

6    made a coverage decision approving the claim under a reservation of rights on October 31, 2016.

7    (ECF No. 54-18 at 2).  Defendant made this determination within thirty days of the conversation

8    between Drs. Klein and Nagy, which was necessary for evaluation of the claim.  (*See* ECF Nos.

9    54-14; 54-15).  Defendant made a coverage decision within a reasonable time.  It is not liable under

10   NRS § 686A.310(d).

11        Plaintiff's final argument under the UCSPA is that defendant misrepresented pertinent facts

12   regarding her coverage, including that (1) she had a mental disorder; (2) her physicians supported

13   that diagnosis; and (3) her claim was subject to ERISA.  (ECF No. 60 at 24).  None of these

14   arguments are availing.

15        Plaintiff's argument is, at bottom, that defendant incorrectly determined the mental

16   disorder limitation applied, thus defendant misrepresented facts in its journey to reach that

17   determination.  Even assuming defendant incorrectly applied its policy provisions, an incorrect

18   determination is not the same as an affirmative misrepresentation, which is what is required of the

19   UCSPA.  *See Albert H. Wohlers & Co. v. Bartgis,* 969 P.2d 949, 961 (Nev. 1998).

20        Plaintiff summarily concludes that defendant concealed information about its investigation,

21   misrepresented the nature of the mental disorder limitation, and subjected her claim to ERISA.

22   *See* (ECF No. 60 at 24).  These unsubstantiated conclusions are insufficient to generate a dispute

23   of material fact.  Plaintiff provides no evidence that defendant concealed information or

24   misrepresented the scope of the limitation.  Similarly, while she alleges, and defendant concedes,

25   that it misapplied ERISA guidelines to the claim, plaintiff never explains how application of

26   ERISA claims handling procedures is a misrepresentation of her policy.  *See* (*Id.*; ECF No. 59)

27        The court grants summary judgment to defendant on plaintiff's claim for violation of NRS

28   § 686A.310.

James C. Mahan
U.S. District Judge

- 12 -

1       *3.* Punitive Damages

2    Defendant also moves for summary judgment on plaintiff's claim for punitive damages.

3 Plaintiff alleges that defendant acted with "fraud, malice, and oppression" when it denied her

4 claim, and thus she is entitled to punitive damages.  (ECF No. 1-1 at 16).

5    Once again, the court has already determined that defendant's conduct was reasonable.

6 Therefore, defendant lacked the requisite state of mind to have acted fraudulently, maliciously, or

7 oppresively, all of which require specific intent.  *See Ainsworth v. Combined Ins. Co.*, 763 P.2d

8 673, 675 (1988); *Pioneer,* 863 F. Supp. at 1251.  Defendant determined, after a thorough

9 investigation, that plaintiff was not entitled to benefits.  *See* (ECF No 54-55).  Defendant apprised

10 her of its investigation at all steps.  *See* (ECF Nos. 54-27; 54-28; 54-29).  The fact that it came to

11 a conclusion that plaintiff found unsatisfactory does not support an accusation of fraud, malice, or

12 oppression.  The court grants summary judgment to defendant on plaintiff's claim for punitive

13 damages.

14       *4.* Breach of Contract

15    Finally, defendant moves for summary judgment requiring plaintiff to prove that she was

16 actually disabled to prevail on her breach of contract claim.

17    As plaintiff states, the policy requires defendant to pay benefits if the insured is "Totally

18 Disabled" in that she cannot perform the main duties of her occupation.  *See* (ECF No. 54-1 at 12).

19 Plaintiff argues that she has established her total disability and it is now defendant's responsibility

20 to rebut that evidence.  *See* (ECF No. 60 at 28).  That argument is presumptive, however.  It is

21 premised on the assumption that plaintiff has proven her disability under the policy, which she has

22 not.  Defendant never conclusively determined that she was totally disabled.  *See* (ECF No. 54-

23 19).  Thus, for relief under a breach of contract theory, plaintiff must prove she was physically

24 disabled and thus entitled to an initial determination that coverage applied.

25    Under the facts at issue, the breach would not be that defendant applied the mental disorder

26 limitation, it would be that defendant incorrectly determined plaintiff was not totally disabled.

27 Therefore, to substantiate that claim, plaintiff must prove that she *was* totally disabled such that

28 the mental disorder limitation does not apply.  The court grants defendant's summary judgment

**James C. Mahan
U.S. District Judge**

motion as to the burden of proof on plaintiff's breach of contract claim.  To prevail on her breach of contract claim, plaintiff bears the burden of proving she was totally disabled.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for partial summary judgment (ECF No. 49) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's motion to extend time to file a reply (ECF No. 73) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's motion for leave to file a reply (ECF No. 74) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's motion to strike (ECF No. 63) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's motion for partial summary judgment (ECF No. 54) be, and the same hereby is, GRANTED.

DATED September 21, 2022.

UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 14 -